*Anne Arundel County, Maryland, et al. v. National Waste Managers, Inc.*, No. 1371, September Term, 2024

**HEADNOTES**

**CIVIL LAW – ATTORNEYS' FEES – BAD FAITH**

A finding of bad faith requires a probe into the party's intent, which is "more often than not provable only by inference from the surrounding circumstances[.]" *Johnson v. Spireon*, 266 Md. App. 198, 240 (2025) (quoting *Talley v. Talley*, 317 Md. 428, 438 (1989)); *Charles v. Charles*, 265 Md. App. 631, 665-66 (2025) (upholding the circuit court's award of attorneys' fees to wife, where the court reviewed the history of the case and found husband's bad faith in bringing and maintaining his claims). Here, the surrounding circumstances include the history of the parties' dispute, extending 30 years.

**CIVIL LAW – ATTORNEYS' FEES – BAD FAITH**

The circuit court determined that the County acted in bad faith by sending certain letters to the Maryland Department of the Environment ("MDE"), which the County knew would cause MDE to terminate National's permit application to operate a rubble landfill. The circuit court was not clearly erroneous in finding that the County had no legal basis to defend against the ensuing action brought by National.

**CIVIL LAW – ATTORNEYS' FEES – SUBSTANTIAL JUSTIFICATION**

The circuit court was not clearly erroneous in finding a lack of substantial justification in the County's defense that letters it sent to the MDE stating National was not in compliance with the access condition constituted "advice" rather than a rescission of the special exception. The Anne Arundel County Code clearly states that rescission of a special exception is a matter to be addressed by the Anne Arundel County Board of Appeals ("Board") and the County admitted the access condition was a matter for the Board.

Circuit Court for Anne Arundel County
Case No. C-02-CV-20-002291

<u>REPORTED</u>

<u>IN THE APPELLATE COURT</u>

<u>OF MARYLAND</u>

No. 1371

September Term, 2024

_____

ANNE ARUNDEL COUNTY, MARYLAND,
*ET AL.*

v.

NATIONAL WASTE MANAGERS, INC.

_____

Berger,
Leahy,
Zarnoch, Robert A.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Leahy, J.

_____

Filed: July 30, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal concerns the award of attorneys' fees in litigation that began a decade before the new millennium. Twenty-five years ago, we declared that the "protracted history of this case arises from the tireless efforts of National Waste Managers, Inc." ("National"), the appellee, "to establish and operate a rubble landfill in Odenton (the 'Landfill'), and the equally persistent opposition of Anne Arundel County (the 'County')" appellant, to those efforts. *Nat'l Waste Managers, Inc. v. Anne Arundel Cnty.*, 135 Md. App. 585, 587 (2000) ("*National IV*").

Today, we resolve the eighth appeal of some variation in the litigation. In January 2024, the Circuit Court for Anne Arundel County ordered the County to pay National's attorneys' fees, holding that the County defended the underlying action without any legal basis which would provide a colorable or meritorious defense. On appeal, the County challenges this fee award.

The County presents four questions for our review,[1] which boil down to one: Did the circuit court err in awarding National $491,984.35 in attorneys' fees?

---

[1] The County's original questions presented are as follows:

I. Did the Circuit Court err when it concluded that the County lacked substantial justification for the defense?

II. Did the Circuit Court err when it considered the entire 30-year history of the parties as the basis for sanctions under Md. Rule 1-341?

III. Did the Circuit Court err when it concluded that the County was a necessary party to the litigation?

IV. Was the award of attorney's fees under Md. Rule 1-341 an abuse of discretion by the Circuit Court?

We hold that the circuit court did not err.  The court reasonably concluded that the County acted in bad faith and lacked substantial justification in its defense of the underlying case, and the court did not abuse its discretion in awarding National $491,984.35 in attorneys' fees.  We therefore affirm.

## BACKGROUND

Since 1995, we have written at least six opinions summarizing the contentious history of the development of this Landfill.[2]  Here, we will focus "on the facts pertinent to the issues before us, gleaned primarily from the record and earlier appellate opinions." *National IV*, 135 Md. App. at 590.

### History of the Parties

In 1988, National sought a landfill permit from the Maryland Department of the Environment ("MDE") and a special exception and variances from the County to operate the Landfill.  The Landfill would comprise:

> [A]pproximately 108 acres of land located near the intersection of Routes 3 and 424, in Odenton, Maryland.  Of the 108 acres subject to the special exception request, only 35 acres of previously cleared property was proposed

---

[2] Due to the abundance of appeals in this case, we will refer to each as "*National*" followed by its sequential numbering "*I-IX*."  The appeals are as follows: *Halle Companies v. Crofton Civic Ass'n*, 339 Md. 131 (1995) (*National I*); *Anne Arundel Cnty. v. Nat'l Waste Managers*, No. 810, Sept. Term 1997 (Md. App. Mar. 25, 1998) (*National II*), *cert. denied*, 350 Md. 275 (1998); *Anne Arundel Cnty. v. Nat'l Waste Managers*, No. 96, Sept. Term 1998 (Md. App. Sept. 29, 1998) (*National III*), *cert. denied*, 352 Md. 336 (1998); *Nat'l Waste Managers v. Anne Arundel Cnty.*, 135 Md. App. 585 (2000) (*National IV*); *Nat'l Waste Managers v. Forks of the Patuxent Improvement Ass'n*, 453 Md. 423 (2017) (*National V*); *Nat'l Waste Managers, Inc., Chesapeake Terrace v. Forks of the Patuxent Improvement Ass'n*, No. 1327, Sept. Term 2019, 2020 WL 5870525 (Md. App. Oct. 2, 2020) (*National VI*); *Anne Arundel Cnty. v. Nat'l Waste Managers*, No. 0565, Sept. Term 2021, 2022 WL 17494630 (Md. App. Dec. 8, 2022) (*National VII*), *cert. denied*, 483 Md. 270 (2023).

for sand and gravel extraction. [National] also sought approval for rubble landfill operations to be conducted at that same location on approximately 482 acres (including the 108 acres for the sand and gravel landfill). Of the 482 acres, only 150 acres of previously cleared property was contemplated for landfill use, to be accomplished through the sequential filling of a number of small cells on the property.

*National I*, 339 Md. at 134-35.[3] The 482-acre parcel[4] was located in a Rural-Agricultural zone where the operations were "permitted by special exception" under Anne Arundel County Code ("County Code"), Title 18 (Zoning), section 18-4-106. *National V*, 453 Md. at 426-27.[5] Nevertheless, National's application for a special exception was denied by the County. *National I*, 339 Md. at 135.

National appealed to the Anne Arundel County Board of Appeals ("Board"),[6] which

---

[3] In *National IV* we explained that, "National, a wholly-owned subsidiary of the Halle Companies ('Halle'), was formerly known as Chesapeake Terrace, Inc. ('Chesapeake'). We shall refer to Halle, Chesapeake, and National collectively as 'National.'" 135 Md. App. at 587 n.2.

[4] National owned the 482-acre parcel. *See National II*, slip op. at 1.

[5] In 2014, the County Council of Anne Arundel County passed Bill No. 21-14, removing rubble landfills as a special exception use in Anne Arundel County by repealing § 18-4-106 of the County Code. County Council of Anne Arundel County, Md. 21-14, 2014 Leg. Sess. (2014) (enacted), https://perma.cc/JND7-5K4X. The County recently published a Comprehensive Update of Article 18, describing proposed amendments to the County Code. *Zoning Code Comprehensive Update*, Anne Arundel County Maryland, https://perma.cc/7ND9-M5JR. Currently, County Code § 18-11-130 describes the compliance requirements for rubble landfills.

[6] In *National I*, the Supreme Court of Maryland explained:

[Under] the Express Powers Act, Md. Code (1957, 1994 Repl. Vol.), Art. 25A, § 5(U), each county is authorized to create a board of appeals. Anne Arundel County, by its charter, created the Board of Appeals as an independent unit of county government and vested the Board with the power

(Continued)

3

held 16 administrative hearings over the course of 17 months. *Id*. Evidence presented at these hearings described the subject property as a gravel quarry in disuse:

> [T]he site was within a resource extraction area on the master plan of the County, was the subject of an existing special exception granted for a sand and gravel operation, and … had been mined off and on for 40 years. The site was likened to a moonscape, and photographs of the site showed debris, deep ravines, and erosion on the property. … Illegal dumping, target shooting, and hunting regularly occurred on the property.

*Id*. National suggested that the site should be accessed from Conway Road, rather than Patuxent Road, to alleviate traffic and wetlands concerns raised by the County and neighbors. *Id*. at 136. National claimed this would provide a "shorter access route, … affect fewer people overall, and … direct the traffic further from the Patuxent River." *Id*.

### Board's 1993 Memorandum Opinion

On December 23, 1993, following three months of deliberation and an onsite visit, the Board issued a 38-page opinion and order granting the special exception subject to seven conditions. Mem. Op., Halle Companies/Chesapeake Terrace, Case Nos. BA 120-90S, 26-91S, 27-91V (Dec. 23, 1993), *hereinafter* "1993 Memorandum Opinion." The opinion summarized the evidence presented at the 16 hearings.

An engineer named J.A. Chisholm assessed the impact of the two alternative access

---

to hear *de novo* all appeals authorized by the Express Powers Act. Anne Arundel County provides for initial action upon a special exception or variance request by an administrative hearing officer. Thereafter, appeal may be taken from the decision of the hearing officer to the Board of Appeals. Anne Arundel County Charter § 603 mandates that "[a]ll decisions by the County Board of Appeals shall be made after notice and hearing *de novo* upon the issues before said Board."

*National I*, 339 Md. at 139-40.

4

points National proposed. 1993 Memorandum Opinion at 2. Chisholm testified that truck trips per day would average 20 and reach a maximum of 60. *Id.* A traffic and transportation planner "assumed 300 trucks a day" would visit the site, but noted this was "probably a high assumption" and that from "a traffic engineering viewpoint, the Conway Road access is the best alternative." *Id.* at 8-9. One neighbor who opposed the Landfill (a "protestant") testified that "Conway Road is a country road which is narrow with very small shoulders and is rutted by excessive truck traffic." *Id.* at 16-17. Another protestant argued that "there is too much truck traffic on the road already" and submitted photographs "showing flooding and … bad turns on Conway Road." *Id.* at 15. A "representative of the Greater Crofton Council" also raised traffic, health, safety, and welfare concerns, arguing there was "no urgent need" for the Landfill "because there are many sand and gravel operations already." *Id.* at 16.

Chisolm explained the community needed the rubble landfill because "18,000 dwelling units [were] proposed to be built within 10 to 15 miles of the site." *Id.* at 5. A hydrogeologist testified that the Landfill was to be "located 240 feet from the closest residence" and would affect only "1 to 6 shallow wells," because most nearby wells "obtain … water from below the clay layer." *Id.* at 6-7. Another engineer explained that because this is a rubble landfill, there should be "no problem with leachate," as leachate occurs from the degradation of water and waste. *Id.* at 7-8. Even so, a protestant argued that the Landfill "should be double-lined" and there should be "a plan … to handle any leachate," highlighting a study showing carcinogens in rubble landfills in Maryland. *Id.* at 14.

Kevin Dooley, a zoning analyst with the Office of Planning and Zoning, identified

5

National's two variance requests: "one, a variance of 760 feet to the 1,000 foot setback from a residence or institutional building, and two, a variance of 100 feet from the required 100 foot setback to deposit fill." *Id.* at 17-18. Dooley stated that "the special exception can comply with all the standards except for filling within 100 feet of the property line." *Id.* at 18. Dooley did not support National's requests because "of the close proximity of the work area to the residences[.]" *Id.* He also noted that with "the amount of additional truck traffic proposed, the roads would need to be improved with shoulders[,]" which was impossible, because the roads were too narrow. *Id.*

Some of the conditions imposed by the Board responded to concerns raised by the protestants. For example, Conway Road, and not Patuxent Road, was "to be used as the entrance to the" Landfill, and "road improvements on Conway Road from Route 3 to Patuxent Road" had to "be constructed before" Landfill operations could begin. *Id.* at 34-35. Recognizing that National may be unable to "obtain the right-of-way from the private property owners" to improve the roadway, the Board encouraged National "to use their best efforts to obtain such rights-of-way to construct the eight foot shoulders." *Id.* at 30. One condition that would later become the focus of much litigation was the condition that "access obtained to the site from Conway Road shall be through a fee-simple right-of-way, not through an easement." *Id.* at 35.

The Board noted that because "the land [was] cratered … up to the property line" from mining, the setback variances would allow National "to fill in those areas so that the dangerous and eroding conditions no longer exist." *Id.* at 33. The Board concluded in its 1993 Memorandum Opinion that National was "capable of meeting all of the performance

6

standards" required by law, had "met [its] burden of showing the necessity" for the variances, and that the operations "will be no more objectionable with regard to noise, fumes, vibration, or light to nearby properties than operations in permitted uses." *Id*. at 27, 30. One member of the Board dissented, mostly based on traffic concerns. *Id*. at 39-44.

*Judicial Review*

Several community associations and the County sought judicial review of the Board's December 1993 decision in the Circuit Court for Anne Arundel County. *National I*, 339 Md. at 137-38; *National IV*, 135 Md. App. at 590-91. The circuit court reversed the Board's decision, but the Supreme Court then granted certiorari and upheld the Board's decision in July 1995. *National I*, 339 Md. at 145-46, 148-49.

> While these judicial-review proceedings were pending,
>
> a bill was introduced before the County Council that included the Landfill in the County's Solid Waste Management Plan ("SWMP"). Subsequently, the legislation was amended to omit any reference to the Landfill. … Because the Landfill was not included in the County's SWMP in May 1994, MDE suspended its consideration of National's permit application, pending receipt from the County of a written statement … advising that the proposed Landfill satisfied the applicable County zoning and land use requirements, and was in conformity with the County's SWMP.

*National IV*, 135 Md. App. at 590-91. The County refused "to send a statement of conformance to MDE," so National filed a seven-count complaint against the County. *Id*. at 591-92. In the first count:

> National sought a writ of mandamus requiring the County to include the Landfill in its SWMP. … The third count sought a declaratory judgment that: (1) National is entitled to have the Landfill included in the SWMP; (2) National is entitled to delivery of the Statement of Conformance to MDE; and (3) the County acted unlawfully in failing to include the Landfill in the 1994 amendments to the SWMP.

7

*Id.* at 591-92.[7] After cross-motions for summary judgment, the circuit court held that National was "entitled to partial summary judgment on count 1, mandamus[] ordering that the [National] project be included" in the SWMP, and that "National was entitled to a declaration that the County had violated State law by failing to include the … Landfill in the SWMP." *Id.* at 592. The County appealed.

While the appeal in *National II* was pending, the County filed multiple unsuccessful motions to stay enforcement of the circuit court's judgment, and National filed a petition for contempt against the County. *National IV*, 135 Md. App. at 593-94. In August 1997, the circuit court found the County in contempt. *Id.* at 594-95. The court fined the County $250,000, with the option to purge the contempt if the County (among other things) "provide[s] within five days … its written statement to MDE that the Landfill meets all applicable county zoning and land use requirements and is in conformity with the County's SWMP." *Id.* at 594 (internal marks omitted). A few days later, the County sent a statement of conformance to MDE:

> Pursuant to the enclosed judicial order, the Anne Arundel County Department of Public Works informs you that the Landfill meets all applicable County zoning and land use requirements and is in conformity with the County SWMP.

*Id.* at 595 (internal marks omitted). In response, the circuit court "issued [an] amended contempt order," deleting the paragraph that ordered the County to issue this statement. *Id.*

---

[7] "Count 3 also included a request for the Statement of Conformance, National did not ask for relief pursuant to that count in its summary judgment motion." *National IV*, 135 Md. App. at 600.

at 596.

The County noted yet another appeal, this time challenging the "findings of contempt in both the original and amended contempt orders." *Id*.; *see generally National III*. In November 1997, with its two appeals still pending, the County "advis[ed] MDE that the special exception had expired," effectively withdrawing the written statement it had issued to MDE to escape contempt fines. *National IV*, 135 Md. App. at 596-97.

In March 1998, we issued our opinion in *National II*, affirming the circuit court's summary judgment ruling that National was entitled to relief. Six months after that, we issued our opinion in *National III*, affirming "the finding of contempt embodied in the original and amended contempt orders." *National IV*, 135 Md. App. at 600. In our opinion affirming the contempt orders, we explained:

> Although the County believed that the Landfill did not conform to the County's zoning and land use requirements, that contention was disposed of when [the Supreme Court] decided [*National I*]. The [*National I*] Court upheld the decision of the [Board] to grant special exception and variance requests for [National's] Landfill. … Because the landfill satisfied all of the criteria set by the County, [the County] did not have the discretion to delete the Landfill from the SWMP.

*National III*, slip op. at 15. Despite our affirmance, we vacated the purge provision from the contempt orders with instructions to the circuit court about how to amend the purge provision. *National IV*, 135 Md. App. at 600.

Having finally prevailed on Count 1 of its complaint, National "moved for partial summary judgment as to Count 3(b) …, seeking" (1) "a declaratory judgment that the County acted unlawfully by refusing to issue a written Statement of Conformance to MDE pursuant to E[nvironment] A[rticle] § 9-210" and (2) "an injunction directing the County"

9

issue such a statement. *Id.* National then amended its complaint to add an eighth count and new averments. *Id.* at 601. Once its new complaint became operative, National moved to have the circuit court enter a new contempt purge condition and for two injunctions: one requiring the County place the Landfill in its SWMP; and the other directing the County to withdraw its letter notifying MDE that National's special exception had expired. *Id.* The circuit court denied this motion, *id.* at 601, so National appealed. *Id.* at 602, 614.

The Supreme Court vacated the circuit court's denial and remanded the case. *Id.* at 614. The Court held that National's special exception did not expire because the two-year period set forth in County Code, Art. 28, § 12-107(a) "was tolled during the entire course of the litigation in this case."[8] *Id.* at 604-05, 614. Indeed, if the County's litigation did not toll the expiration of these special exceptions, then "a developer facing a time-related condition could almost always be thwarted in its efforts by the inevitable delay resulting from litigation, regardless of the merits; the right to proceed would necessarily expire

---

[8] In 1998, § 12-107 of the County Code provided:

(a) Except as provided in subsection (b) or subsection (c) of this section, approval of a special exception is rescinded by operation of law if:

(1) action to implement the use is not begun within one year after the decision of the approving authority; and

(2) the use is not completed and in operation within two years after the decision.

*National IV*, 135 Md. App. at 599. This provision is no longer in the Zoning Ordinance. The current provision that addresses the method for rescission, suspension or modification of a special exception is County Code § 18-16-404 and the provision providing for the time period after which special exceptions are void is County Code § 18-16-405.

before a court could rule otherwise." *Id*. at 608.  The Supreme Court refused to accept the County's contrary arguments, which would have "elevate[d] gamesmanship to new heights." *Id*.

In June 2001, having now lost four consecutive appeals, the County sent a letter advising MDE that the Landfill is "in conformance with the County Solid Waste Plan" and:

> meets all applicable county zoning and land use requirements subject to the performance of the conditions required by the special exception approval, including, but not limited to, fee simple ownership of access to the site from Conway Road.  As of this writing, the County has not been provided with evidence that the required access has been obtained by [National].

The Board then granted a two-year extension to the special exception, reasoning that "National had to begin the process nearly over again" because of the "delay occasioned by the litigation[.]" *National V*, 453 Md. at 430 (internal marks omitted).  The Board granted two more extensions, but it denied National's fourth extension request, so National appealed again, and MDE again halted its review of the permit application.  *Id*. at 431-35, 437.

In the fifth appeal, the Supreme Court remanded the case to the Board to "address and resolve … what impact, if any, the requested two-year extension … would have on the character of the neighborhood, the appropriate use or development of adjacent property, or the public welfare." *Id*. at 446.  The Court reasoned that the Board should have evaluated the effect of temporal variances, not the prolonged disagreement among the parties. *Id*. at 445-46.

On remand, the Board held a hearing and "issued a supplemental decision granting the temporal variance application[,]" but this decision did not survive judicial review.

11

*National VI*, 2020 WL 5870525, at *3. We explained in *National VI* that the Board had not addressed what impact the extension would have on the property, the neighborhood, or the public, as the Supreme Court had directed. *Id.* at *4-5.

In August 2020, while our decision in *National VI* was pending, the County Executive wrote a letter to MDE that backtracked on the County's earlier approvals:

> On behalf of the citizens of Anne Arundel County, thank you for allowing my office the opportunity to provide comments on the Phase III Permit Application for … [the] Landfill … The proposed project has, in point of fact, *not* satisfied all applicable county zoning and land use requirements because the applicant has *not* acquired access to the site as required by a special exception that is now more than 26 years old.

(Emphasis in original). The County Attorney then wrote to MDE reiterating the County's position that, notwithstanding the many court pronouncements to the contrary, the Landfill "still does not meet all applicable County zoning requirements." Based on this representation, the County Attorney "request[ed] that, at a minimum, MDE follow State law and cease processing this permit application." Going yet further, the County Attorney argued that because of the Landfill's "continued failure to satisfy the zoning condition regarding access, the application should be denied."[9] MDE denied National's permit application, citing the letters as the "basis for halting the process." *National VII*, 2022 WL 17494630, at *3.

In response, National hired a large national law firm, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), which sent a letter to the County countering the legal

---

[9] The County has repeatedly stated it has no intention of selling National the land required by the special exception as an access way from Conway Road to the Landfill.

and factual claims made by the County and demanding that the County retract the letters and "issue corrective letters instructing MDE to resume its Phase III review." Quinn Emanuel and the County exchanged letters, but they failed to reach an agreement.

In December 2020, National filed a new complaint for declaratory and injunctive relief against the County and MDE. This complaint sought: (1) "a judgment declaring that its proposed development" of the Landfill is "in compliance with applicable zoning and land use regulations"; (2) "an injunction directing the County to issue a statement" to MDE confirming that the Landfill is in compliance; and (3) "an injunction directing MDE to continue its Phase III review" of National's permit application to operate the Landfill. National separately filed a petition for a writ of mandamus ordering that: (1) the County Executive, the County Attorney, the County Planning and Zoning Officer, and the Chief of the County's Solid Waste Operations, Land & Materials Administration "promptly issue a written statement confirming that the … Landfill '[m]eets all applicable County zoning and land use requirements' under Section 9-210(a)(3) of the Environment Article and … retract its recent letters stating to the contrary"; and (2) the Chief of the County's Solid Waste Operations, Land & Materials Administration and MDE "promptly resume reviewing [National's] solid waste permit application."[10]

Of special relevance to this, the eighth appeal, National's mandamus petition sought

---

[10] MDE responded with a motion to dismiss the petition and complaint. National responded to MDE's motion. On May 25, 2021, the circuit court denied MDE's motion to dismiss and ordered MDE to "continue its phase III review of [National's] permit application to operate the . . . Landfill[.]"

an award of attorneys' fees.  National recounted that "[f]or almost three decades, [National] has sought to develop the … Landfill in the face of substantial bad-faith conduct by the County to interfere with [National's] application for a refuse disposal permit from MDE."  After decades of litigation, just as National "was nearing the end of the MDE permit review process, the County … took action to halt MDE's review by asserting, wrongfully, that the … Landfill was not compliant with local zoning and land use regulations."  National alleged that the County had not even warned it of the County's new legal position: "the County did not even inform [National] that it would be taking this position with MDE— instead, [National] only learned of the County's bad-faith conduct from MDE."  National argued that "the County's position that the access road condition must be satisfied before the … Landfill can be considered compliant is unsupported by a plain reading of the special exception, inconsistent with the prior decisions of Maryland courts and actions of MDE, and inconsistent with prior position statements of the County."

National moved for summary judgment on its mandamus petition, arguing that the County "failed to perform its nondiscretionary ministerial duty by refusing to certify the Landfill's compliance to MDE, as required by" Maryland Code, Environment Article (2014 Rep. Vol.) ("EN") § 9-210.[11]  National explained that these 2020 actions of the

---

[11] Section 9-210 was last amended in 1998.  At that time, the General Assembly amended EN § 9-210(b) to require that MDE stop processing a permit application until the County has provided MDE with a written statement that the refuse disposal system meets all applicable County zoning and land use requirements and is in conformity with the County's solid waste plan.  H.B. 1024, 1998 Leg., Reg. Sess. (Md. 1998), https://perma.cc/6U5H-SEET.

County Executive and the County Attorney were the same actions for which the County was held in contempt 23 years earlier. And National contended that the County's obstinate refusal to comply with decades of court orders "threaten[ed] to undermine [National's] due process rights under the law and subvert the enormous resources [National] has invested over a period of decades."

The County cross-moved for summary judgment, arguing that an "intervening change in circumstance" rendered "the condition of the special exception impossible to achieve"—the County had acquired all of the properties that could grant the Landfill access to Conway Road, and the County refused to sell them to National. In addition, there were "several other properties owned by third parties that the access route must also cross, including the WB&A Trail which was acquired by Anne Arundel County" and "cannot be conveyed to [National] in fee-simple." Therefore, the County argued, a writ of mandamus "would change nothing." Consequently, despite decades of court orders to the contrary, the County claimed that the Landfill was not in compliance with local zoning. Perhaps as a backup, the County also argued that its letters did not demand anything of MDE, but merely apprised MDE of certain facts.

After a hearing in April 2021, the circuit court granted National's motion for summary judgment in part, denied the County's cross-motion, and denied MDE's motion to dismiss. The court voided the County's 2020 letters and ordered MDE to continue Phase III review of National's permit application. The circuit court held that the County "overstepped the bounds of [its] authority" by sending the 2020 letters, violating the due process rights of National. The court declared that under the County Code, the "County

15

has no authority to unilaterally decide that [National] no longer has a right to develop the property without a proper hearing by the Board" and pointed out that the County admitted "that they were not aware of any cases or statutes that allowed [the County] to send the letters to MDE." The County appealed, again.

## The Underlying Case

### *National Moved for Attorneys' Fees*

With the 2021 appeal pending, National moved for an award of attorneys' fees in the circuit court. National claimed "the County staked out a legal position … without any legal support" and "engaged in 'bad-faith' litigation … that lacked 'substantial justification.'" National argued the "County's tactics preceding and during this litigation are consistent with a pattern of meritless obstruction dating back 30 years" and the 2020 "letters were (and should be) the final straw." National pointed out that "just as MDE was nearing the end of its review," the County "urged MDE to outright deny the application" in its letters, citing a lack of satisfaction of the condition of fee-simple access as grounds, forcing National "to litigate once more." And National claimed that the County's argument "that the letters were mere advice and not legally binding" at the summary judgment hearing contradicted its other arguments and revealed that the County knew its position was frivolous.

National's fee application explained that given the long history of the case, National "needed to hire expert litigators … to handle a vast factual and legal record on a compressed timeframe." To accomplish this, National's litigation team of eight lawyers had spent a combined 1,655.7 hours on the case:

16

one partner, one senior associate, and two junior associates, as well as another senior associate who was brought on to assist[.] … [T]hese attorneys billed 1,512.70 hours at rates ranging from $425 to $1,200 per hour. Quinn Emanuel also incurred costs of $5,271. In addition, the Quinn Emanuel team was assisted by local counsel, Adam Van Grack and Theodore Kiviat at Longman & Van Grack, who ensured compliance with local Maryland rules and procedure, and collectively billed 95.2 hours at the rate of $375. Quinn Emanuel was also assisted by Susanne K. Henley at Henley & Henley, who has provided counsel to [National] since it first sought approval for the … Landfill and who billed 47.8 hours at the rate of $295 per hour.[12]

National argued the time expended was reasonable because "Quinn Emanuel had to dedicate a lean but appropriately staffed team to digest an extensive record, work through various legal theories and statutory regimes, respond to myriad legal arguments and lines of cases raised by the County and MDE, and do so on an accelerated timetable." Finally, National claimed that Quinn Emanuel's rates—ranging from $425 to $1,200—were reasonable and comparable to those of similar premier law firms in the Washington, D.C. legal market. Similarly, National claimed Longman & Van Grack's and Henley's fees were reasonable because they were commensurate with the rates charged by comparable Maryland lawyers. In support of its total request, National included invoices detailing the attorneys' fees. National asserted that despite its efforts to "bring the litigation to a close as swiftly and efficiently as possible" it still incurred $1,288,349.70 in attorneys' fees and costs.

---

[12] National noted that its "request for Quinn Emanuel fees only include[d] fees incurred starting from the preparation of the petition and complaint, going forward" and that its "invoices also reflect limited work on related, non-litigation issues such as [National's] ongoing matters before the Anne Arundel County Board of Appeals." National pointed out that any "billing entries that included non-litigation issues … h[ad] been removed from [National's] attorneys' fees request."

In opposition to National's fee application, the County advanced four arguments: (1) the County had a "colorable basis" for its positions, because the County's ownership of nearby land made complying with the variance conditions impossible, especially because National had initiated the suit and the governing law was "underdeveloped and unexplored"; (2) the County's letters preceded the court proceeding, so they could not be the subject of sanctions; (3) even though the County was "not aware of any cases or statutes that allowed the County Executive or the County Attorney to send the letters to MDE" because the County Planning and Zoning Officer reports to the County Executive, the letter was reasonable in context; and (4) the amount of fees was "inherently unreasonable" for a case that lasted four months and was expedited. For these reasons, the County asked the court to find the requested attorneys' fees "unreasonable" and "deny them outright, or in the alternative, discount them significantly" to at most, 300 hours at the "Anne Arundel County prevailing legal rate of $295 for a total of $88,500." In the alternative, the County asked the circuit court to stay the fee proceedings until the resolution of the pending appeal. National's motion for attorneys' fees was stayed pending the resolution of the appeal.

In December 2022, we affirmed the circuit court's entry of summary judgment in National's favor. *National VII*, 2022 WL 17494630, at *5. We agreed that the 2020 letters were "attempts to rescind or modify the 2001 zoning approval letter." *Id*. at *4. We noted that the "County's reference to the 2020 letters as 'notifications' [was] contrary to the unmistakable tenor of the letters, which clearly requested that MDE stop processing the permit or deny the permit outright." *Id*. at *5. We determined that although "the County certainly ha[d] the right to challenge the validity of the Special Exception through a proper

18

motion with the Board, [the] County Executive and County Attorney did not have the authority to request that MDE halt or deny [National's] permit process without a hearing." *Id*. Because County Code § 18-16-404 "provides the method for rescission, suspension, or modification of a special exception" and the County did not follow that procedure, "which would have required a hearing[,]" the County's 2020 letters "violated the due process rights of [National.]" *Id*. We also concluded that "the record indicate[d] that the County expressly waived the argument that implementation of the Special Exception was impossible" when the County told the court that it was a matter for the Board. *Id*. at *6. Three months later, the Supreme Court denied certiorari. 483 Md. 270 (2023).

With the appeals resolved, National filed a supplemental motion for attorneys' fees requesting the court order the County pay an additional $494,009.60 in attorneys' fees and costs[13] "associated with the appeal" before this Court and the writ of certiorari before the Supreme Court. This brought National's total fee request to $1,782,359.30. The County opposed National's fee application in July 2023, and the circuit court held a hearing in October 2023.

*The Circuit Court Grants Attorneys' Fees*

In January 2024, the circuit court granted National's motions for attorneys' fees and issued a memorandum opinion in which it determined that the County acted in bad faith or

---

[13] The supplement included $466,907.10 for Quinn Emanuel, $21,772.50 for Longman & Van Grack, LLC, and $5,330.00 for Henley & Henley. These totals reflected 484.7 hours, 58.1 hours, and 16.4 hours of work, respectively. They also reflected updated rates for each attorney, accounting for inflation in the cost of attorney services. National produced its invoices.

without substantial justification when it defended its clearly erroneous actions without any evidence of legal merit. The court stated that it was not bound "to only consider the instant litigation in determining bad faith," reasoning that the "surrounding circumstances have been so clearly laid out in the pleadings" and limiting its consideration "would undermine the purpose of" Maryland Rule 1-341. The court observed that the history of the litigation between the parties made it "clear that the County has been using the judicial process to defend an action which they knew was not substantiated and could have been remedied" upon National's first notification that the County's actions were in violation of National's due process rights.

The court determined that attorneys' fees were warranted because the County "failed to rely on any legal basis which would provide a colorable or meritorious defense" and waived its impossibility argument, the only legal theory it offered. The court stated that the "issues of impossibility and the special exception should have been brought before the Board" but the County instead "chose to expedite the process by sandbagging the project and going to MDE directly without an opportunity for [National] to respond." The court "[did] not believe that the actions of the County Executive and County Attorney before the filing of the suit" could "by themselves" be grounds for attorneys' fees, but "the action of sending the letters led [National] to file a claim to pursue their due process rights, of which the County's subsequent conduct can and will be reviewed for bad faith or lacking substantial justification." Pointing to Md. Rule 1-341, which applies to cases "'maintained or defended' in bad faith[,]" the court determined the County's defensive posture had "little to no bearing o[n] whether the County acted in bad faith or without substantial

20

justification." The court stated that the only purpose of the County's defense was "to impute additional delays onto [National's] efforts to obtain a permit to operate the Landfill that ha[d] been ongoing for over 30 years." The court continued:

> The other arguments brought before the Court, i.e., that the letters were mere advice and the right of the Executive to send the letters, do not have any legally cognizable basis, and fail to assert any fairly debatable, colorable, or legitimate argument for the [c]ourt to consider. … [T]here is no indication that would allow the County to reasonably believe that sending the letters was within the scope of the Executive's duties and would not cause this exact type of litigation.

The court found that this case was "a rare and exceptional situation" that justified an award of attorneys' fees:

> The County's continued persistence in deterring [National's] progress in operating the Landfill is certainly a rare and exceptional situation, in which [National] has been required to expend substantial costs and attorney[s'] fees simply to obtain the same due process rights as any other landowner in the County. The lack of substantial justification in this case warrants attorney[s'] fees to compensate [National] for being forced by the County to file and litigate this action against a meritless defense simply to receive the due process rights which they are rightfully owed.

*The Circuit Court Assessed Attorneys' Fees Amount*

Although the circuit court agreed that an award of attorneys' fees was warranted, the court found National's request for $1.7 million "beyond the pale" and ordered the parties to file supplemental briefing on National's reasonable fees.

In its supplemental brief, National maintained its top-line position that it should receive all of the fees it incurred, but National also provided four alternatives for how the circuit court could revise Quinn Emanuel's attorneys' fees: (1) $1,109,374 as the invoiced cost of the core team of lawyers working on the case (two partners, three associates, and

21

an appellate specialist); (2) $553,565 for the same core team, billed at an hourly rate of $475 an hour; (3) $734,041.25 for all Quinn Emanuel attorneys who worked on the case, billed at an hourly rate of $387.50; or (4) $634,772.50 for all Quinn Emanuel attorneys who worked on the case, billed a rate of $300 per hour for associates and $475 per hour for partners. National also sought $57,472.50 for attorneys' fees incurred by Longman & Van Grack at an hourly rate of $375, and $19,451.70 for attorney's fees from Susanne K. Henley, Esq. at an hourly rate of $295 to $395. National even offered to "provide fully unredacted billing records by overnight courier to chambers for *in camera* review."

The County responded that the court should "decline to make any monetary award at all, or in the alternative," award no more than $112,100, which the County claimed reflects the reasonable number of 380 hours at the average rate of $295, in line with the $295-395 that National's "local counsel" Henley testified under oath was "a customary rate for legal services for Anne Arundel County practitioners." In support of its assertion that 380 hours was reasonable, the County submitted an affidavit from a legal practitioner who litigated "a common law mandamus case against MDE … to obtain a landfill permit and opine[d] that 200 hours is a reasonable time spent for the mandamus action and 180 hours is reasonable for the appeal." The County claimed National provided no evidence that the fees were reasonable and complained that National's supplemental filings are the same as what National previously submitted. The County also argued the court should "only allow compensation for a lead attorney on each task it deems was appropriate," calling time entries that involved both a partner and an associate duplicative. Finally, the County asserted that the entire litigation against the County was unnecessary because National

22

could have achieved the same result by "bringing a common law mandamus action against MDE," since MDE is the "sole entity that controls whether to continue or cease processing a permit application."

After reviewing "the filings and billing records" *in camera*, the court issued a supplemental memorandum opinion in August 2024, in which it determined National was entitled to $491,984.35 in attorneys' fees for 1,245.53 hours at a rate of $395 per hour. Relying on its earlier opinion, the court emphasized "that the County unnecessarily furthered the litigation in bad faith and/or without substantial justification" and declared that it would "not revisit those issues." In determining that 1,245.53 hours was reasonable, the court noted "the complexity of the issues, the skill required based on the dispositive nature of the filings, the result of the proceedings, and the timeline of the case" but agreed with the County that the extensive hours spent by National's attorneys were unreasonable and for example, "discounted any charges for duplicative tasks[.]"

As for the hourly rate, the court stated that "[National] fail[ed] to demonstrate why the work completed by Quinn Emanuel could not have been completed by a local attorney" but acknowledged that "the ability to do so likely would have required additional resources or a significantly longer litigation schedule." The court rejected National's request that hourly rates for Quinn Emanuel attorneys be based on the average rate for the Mid-Atlantic region, noting that the court "does not consider the entire Middle Atlantic region to be representative of the Anne Arundel County legal community" and Rule 1-341 "applies a customary fee in the attorney's 'legal community.'" The court instead chose to look to Henley's affidavit in which she provided that "customary rates" for legal services within

23

Anne Arundel County were between $295 and $395. Applying the court's personal knowledge of the case, "recollections of the attorneys on the case, the work completed, the intricacies of the issues, the affidavits submitted by counsel, the hourly rates and experience of the attorneys, and how effective and beneficial the work was to the client," the court concluded that $395 was an appropriate hourly rate.[14] The court therefore ordered that the County pay National $491,984.35 in attorneys' fees. The County timely noted this appeal.

**DISCUSSION**

**I.**

**Award of Attorneys' Fees**

**A. Parties' Contentions**

On appeal, the County challenges the circuit court's award of attorneys' fees on four bases: 1) there was substantial justification for the County's defense of the lawsuit; 2) it was error for the court to consider the 30-year history when determining sanctions under Rule 1-341; 3) it was error for the court to conclude that the County was a necessary party to the case; and 4) the court's award of attorneys' fees under Rule 1-341 was an abuse of

---

[14] Although one of the options offered by National contemplated applying a lower hourly rate of $387.50 for all Quinn Emanuel attorneys who worked on the case for a greater overall award of $734,041.25 in attorneys' fees, National also pressed that it was entitled to higher rates under the full invoiced amount. *See Estate of Castruccio v. Castruccio*, 247 Md. App. 1, 53 (2020) (instructing, in the context of an Estate case applying Rule 19-301.5(a), that courts may permit higher rates than customary in the locality, "such as when local counsel with the necessary expertise is unavailable, when the complexity of the case warrants the higher rates charged by attorneys who concentrate in a specialized area of the law, or when local counsel is unwilling to take a case."). We do not consider whether the court appropriately reduced Quinn Emanuel's fees as National did not file a cross-appeal.

discretion.

*First*, the County contends there was substantial justification, because the County's defense involved a "novel factual scenario": EN § 9-210 does not address how to proceed when the condition to the zoning approval has not and cannot be met. The County distinguishes the facts here from those in *Piney Orchard Community Associates v. Maryland Department of the Environment*, 231 Md. App. 80 (2016), in which the County issued a zoning confirmation letter because the site met all zoning requirements. The County argues that the letter here "did not definitively confirm that the Conway Road Site met all applicable zoning requirements" because there were unsatisfied conditions to the special exception. The County argued that the 2020 letters merely reiterated this point. Further, the County claims that MDE's decision to halt its review of the permit started the litigation, and that there is no evidence of "intentional misconduct" by the County. The County points to "ample evidence" of its good-faith efforts throughout the litigation, like agreeing to expedited briefing.

National responds that the County lacked a "cognizable basis and fail[ed] to state any fairly debatable, colorable, or legitimate argument." National argues the County knew that any complaints could be appealed to the Administrative Hearing Office and the Board. Therefore, National claims the County's 2020 letters were an "unlawful acceleration of the access determination." And National argues the County is collaterally estopped from raising an impossibility argument and claiming this provides substantial justification for its defense because the County waived this argument below.

*Second*, the County claims the court was clearly erroneous in considering the

25

30-year history of the parties in determining attorneys' fees, arguing that neither Rule 1-341 nor our decisional law support an award of attorneys' fees based on conduct outside of the proceeding.

National responds that the attorneys' fees were only for work done in this case, not for conduct occurring before this action, and that it was not an abuse of discretion for the court to consider the long history of the parties.

*Third*, the County argues it is not a necessary party because under EN § 9-204(d) and (g), "the sole authority to review, or halt review, of the solid waste disposal permit was with MDE"—the County's only role under § 9-210(a)(3) was to "provide a written statement[.]" The County claims that when it sent the 2020 letters it merely "reminded" MDE that the access condition had not been satisfied and then MDE *chose* to cease processing the permit application—MDE could have dismissed the letters and proceeded with the permit application. Similarly, the County claims that retracting the letters would have had no effect, as the County has no control over MDE's actions. The County argues that if it had been dismissed from the case, judgment could have been entered against MDE, and National would have still obtained full relief.

National responds that the County was a necessary party because MDE could not have ignored the letters as they were not requests but were "clearly sent to avoid the proper procedures, and were wholly unjustified." According to National, it is "inconceivable" that the County could send a letter to MDE informing MDE that the Landfill no longer conforms to the zoning and land use regulations and there be no response from MDE.

*Fourth*, the County contends the amount of attorneys' fees awarded was

26

unreasonable because the time spent exceeded what was customary and the rates were excessive as they were the highest that Henley quoted. The County argues that National's claim of "2,214 hours to litigate expedited cross-motions for summary judgment with no discovery, no depositions, and no trial is simply not reasonable when 770 hours of time was a reasonable time" in *Brady, et al. v. The Hartford Fire Insurance Company*, 610 F. Supp. 735, 741 (D. Md. 1985), a case involving "all those procedural elements." The County submits that the court should rely on the testimony of the County's expert and award no more than 380 hours for the mandamus action and appeal. Therefore, the County maintains that an award of no more than $112,100 represents a reasonable amount of time at a reasonable rate.

National responds that the court correctly considered caselaw on attorneys' fees, the billing records submitted by National, the billable rate of local attorneys and the arguments of the parties in awarding the attorneys' fees, discounting invoices for duplicative tasks and adjustments.

### B. Legal Framework

*The Permit Approval Process*

To provide context for our review of the parties' contentions on appeal, we begin with an outline of the statutory framework governing landfill permits. In Maryland, a "person constructing, operating, altering, or extending a rubble landfill must" obtain a permit. *Holmes v. Md. Reclamation Assocs., Inc.*, 90 Md. App. 120, 129 (1992); EN § 9-204(d). MDE is the "agency vested with authority to regulate the installation, alteration, and extension of refuse disposal systems." *Piney Orchard Cmty. Ass'n v. Md.*

*Dep't of the Env't*, 231 Md. App. 80, 85 (2016); EN § 9-204(d) ("A person shall have a permit issued by the Secretary under this section before the person installs, materially alters, or materially extends a water supply system, sewerage system, or refuse disposal system."); EN § 1-101(n) ("'Secretary' means the Secretary of the Environment"); EN § 9-201(e) ("'Refuse disposal system' includes … [a] landfill system [or a] landfill").

Upon receiving applications for permits to operate disposal systems, such as landfills, MDE engages in a three-phase technical review process: 1) "preliminary review of the application and the site" along with an "opportunity for a public informational meeting," 2) review of the "soil, geology, and hydrology of the proposed site[,]" and 3) comparison of "the applicant's engineering plans and reports with MDE's technical regulatory requirements" to ensure "the proposed landfill will be constructed in a manner that protects public health, public safety, and the environment." *Piney Orchard*, 231 Md. App. at 85-86; Code of Maryland Regulations ("COMAR") 26.04.07.13-.18. "At the completion of each of these phases, the applicant must submit a report, which is reviewed and approved" by MDE before the start of the next phase. *Piney Orchard*, 231 Md. App. at 85. MDE may refuse to grant the permit at any phase. COMAR 26.04.07.06(C)(4)(b); COMAR 26.04.07.07(D)(4); COMAR 26.04.07.08(D)(2).

Under EN § 9-210, which outlines the prerequisites for the issuance of permits for landfills, the County and MDE "maintain separate and distinct roles." *Piney Orchard*, 231 Md. App. at 100. Section 9-210 requires that MDE coordinate with County officials in the permitting process:

(a) Subject to the provisions of subsection (b) of this section, the Secretary may

28

not issue a permit to install, materially alter, or materially extend a refuse disposal system regulated under § 9-204(a) of this subtitle until the requirements set forth in this subsection are met in the following sequence:

(1) Except for the opportunity for a public informational meeting, the Department has completed its preliminary phase 1 technical review of the proposed refuse disposal system;

(2) The Department has reported the findings of its preliminary phase 1 technical review, in writing, to the county's chief elected official and planning commission of the county where the proposed refuse disposal system is to be located; and

(3) The county has completed its review of the proposed refuse disposal system, and has provided to the Department a written statement that the refuse disposal system:

   (i) Meets all applicable county zoning and land use requirements; and

   (ii) Is in conformity with the county solid waste plan.

(b) Upon completion of the requirements of subsection (a)(1) and (2) of this section, the Department shall cease processing the permit application until the requirements of subsection (a)(3) of this section are met.

As directed under EN § 9-210(a) and (b), after completion of Phase 1, MDE reports its findings to the "county's chief elected official and planning commission" of the County and awaits a "written statement" that, among other things, the disposal system "[m]eets all applicable county zoning and land use requirements[.]" *Piney Orchard*, 231 Md. App. at 86. MDE must then stop its review process until it receives the statement from the County. *Id*. MDE's only responsibility regarding "the written statement from the County is to confirm that it received a letter from the County stating that 'the refuse disposal system … [m]eets all applicable county zoning and land use requirements' prior to continuing the

29

permit approval process." *Id*. at 97. "The statute makes clear that the three steps required by EN § 9-210(a) must be followed in this sequence." *Id*. at 86.

The State has delegated to local county governments "the authority to plan facilities for solid waste disposal[,]" the responsibilities of which are detailed in COMAR. *Holmes*, 90 Md. App. at 128.[15] As a charter county, the County is authorized to "enact local laws relating to zoning and planning to protect and promote public safety, health, morals, and welfare" pursuant to § 10-324 of the Express Powers Act, Maryland Code (2013), Local

---

[15] Article XI-A of the Maryland Constitution, commonly referred to as the Home Rule Amendment, allows "Baltimore City and the counties of Maryland to adopt a charter form of local government." *Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*, 480 Md. 394, 423 (2022) (quoting *McCrory Corp. v. Fowler*, 319 Md. 12, 16 (1990)). While the Amendment does not provide absolute autonomy to the governments, section three of Article XI-A provides the charter counties with the "power to enact *local laws*" of the county. *Id.* at 424 (quoting Md. Const. art. XI-A, § 3). The Amendment mandates that "the General Assembly enumerate and delegate certain powers, which may be exercised by" charter counties. *Angel Enters. Ltd. P'ship v. Talbot Cnty.*, 474 Md. 237, 261 (2021). In compliance with this mandate, the General Assembly enacted the Express Powers Act, Maryland Code (2013), Local Government Article ("LG") § 10-101, *et seq*., "which … endows charter counties with a wide array of legislative and administrative powers[.]" *Id.* at 261 (quoting *Ritchmount P'ship v. Bd. of Supervisors of Elections for Anne Arundel Cnty.*, 283 Md. 48, 57 (1978)). The Express Powers Act lists the enumerated powers but also "grants a charter county council additional legislative powers to pass ordinances or resolutions that 'may aid in maintaining the peace, good government, health, and welfare of the county'" to the extent that the exercise is not inconsistent with State law. *Id.* at 262. Under the Express Powers Act, code counties, which are authorized by Article XI-F of the Maryland Constitution, have most of the same powers as charter counties such as that they can "enact, amend, or repeal a public local law of that county[.]" Md. Const. art. XI-F, § 3; *see State v. Holton*, 193 Md. App. 322, 369 (2010). However, for code counties, the adjustment must be done "by a resolution of the board of county commissioners" while for charter counties, the adjustment must be done by the County Council or in the case of Baltimore City, by the Mayor and City Council. Md. Const. art. XI-F, §§ 3, 6; Md. Const. art. XI-A, § 3. Also, unlike charter counties, code counties do not have a document like a charter that sets out the governmental structure. *Kent Island Def. League, LLC v. Queen Anne's Cnty. Bd. of Elections*, 145 Md. App. 684, 692 n. 2 (2002).

Government Article ("LG"). However, the County and MDE's roles in regulating solid waste management overlap significantly. For example, each county must create and maintain a Solid Waste Management Plan ("SWMP") that spans ten years and must be approved by MDE. COMAR 26.03.03.02; EN § 9-503(a). The SWMP must, subject to special provisions, be reviewed by the County every three years and "provide for amendment or revision" at least every two years in accordance with a schedule set by MDE. EN § 9-503(b); EN § 9-505(a)(14). The County is allowed to "initiate revisions, but MDE retains final authority to require the county to revise or amend its plan." *Mayor and City Council of Balt. v. New Pulaski Co. Ltd. P'ship*, 112 Md. App. 218, 230 (1996) (citing EN § 9-503(c)).

Further, when the County "submits its proposed county plan or a proposed revision or amendment of its county plan to [MDE]," MDE can take one of four actions: 1) approve; 2) disapprove; 3) approve in part and disapprove in part depending on the circumstances; or 4) "[m]odify or take other appropriate action on the proposal." EN § 9-507(a). If MDE disapproves, in whole or in part, MDE must provide the County with "a written notice of disapproval that states the reasons for disapproval" and the County can ask MDE to reconsider. EN § 9-508(a), (b). The County must also submit "[p]rogress reports on the development of its county plan" and a "report of its review conducted at least every 2 years, including any revision or amendment of the county plan that has been adopted." EN § 9-506(b).

31

*Maryland Rule 1-341 and Standards of Review*

Maryland Rule 1-341(a) provides:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification, the court, on motion by an adverse party, may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it.

This rule provides "a limited exception" to the American Rule that litigants pay their own attorneys' fees, *Christian v. Maternal-Fetal Med. Assocs. of Md., LLC*, 459 Md. 1, 18 (2018), that should be considered "an extraordinary remedy," and "used sparingly." *Bennett v. Ashcraft & Gerel, LLP*, 259 Md. App. 403, 459 (2023) (quoting *Major v. First Virginia Bank-Central Md.*, 97 Md. App. 520, 530 (1993)). Maryland Rule 1-341 primarily serves as a "'deterrent' against abusive litigation." *Christian*, 459 Md. at 19 (quoting *Worsham v. Greenfield*, 435 Md. 349, 369 (2013)). Even so, it is not "a punishment"; it is "a mechanism to place 'the wronged party in the same position as if the offending conduct had not occurred.'" *Id.* (quoting *Major*, 97 Md. App. at 530).

Before awarding attorneys' fees under Rule 1-341, a judge must make two findings:

> *First*, the judge must find that the proceeding was maintained or defended in bad faith and/or without substantial justification. This finding will be affirmed unless it is clearly erroneous or involves an erroneous application of law. *Second*, the judge must find that the bad faith and/or lack of substantial justification merits the assessment of costs and/or attorney's fees. This finding will be affirmed unless it was an abuse of discretion.

*Inlet Assocs. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 267-68 (1991) (emphasis added).

As we conduct our review, we will view the evidence in the light most favorable to the

prevailing party and the "burden of demonstrating that a court committed clear error falls upon the appealing party." *Christian*, 459 Md. at 21.

*Bad Faith and Lack of Substantial Justification*

Bad faith, for the purposes of Rule 1-341, means "vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons." *Inlet Assocs.*, 324 Md. at 268. For example, in *Inlet Associates*, the Supreme Court held that the "trial judge was not clearly erroneous in finding both bad faith and lack of substantial justification in Inlet's suit against Burnett and the judge did not abuse his discretion in assessing costs and attorney[s'] fees under Md. Rule 1-341" because the lawsuit was filed against Burnett, an attorney, "for the purpose of coercing the attorney to settle other … litigation." *Id*. at 271. An award of attorneys' fees for bad faith is "intended to reach only intentional misconduct." *Johnson v. Spireon*, 266 Md. App. 198, 240 (2025) (quoting *Talley v. Talley*, 317 Md. 428, 438 (1989)). We have recognized that the requisite intent is sometimes difficult to prove, and may be "provable only by inference from the surrounding circumstances[.]" *Id*. While "a finding that a cause of action was brought or maintained without substantial justification requires an examination of the merits, a finding of bad faith does not necessarily involve such an examination." *Id*. at 243.

A lack of substantial justification arises when there is no "reasonable basis for believing that the claims would generate an issue of fact for the fact finder." *Christian*, 459 Md. at 22 (quoting *Inlet Assocs.*, 324 Md. at 268). Put differently, the claim or litigation position is not "fairly debatable … colorable, or … within the realm of legitimate advocacy." *Id*. (quoting *URS Corp. v. Fort Myer Constr. Corp.*, 452 Md. 48, 72 (2017)).

33

However, the lack of substantial justification "cannot be found exclusively on the basis that 'a court rejects the proposition advanced by counsel and finds it to be without merit.'" *Id.* at 25 (quoting *State v. Braverman*, 228 Md. App. 239, 260 (2016)). Instead, in determining whether a claim lacks substantial justification, "a court must conduct 'an examination of the merits' under the totality of the circumstances[,]" without falling into the "trap of utilizing hindsight[.]" *Id.* at 23 (quoting *Kelley v. Dowell*, 81 Md. App. 338, 344 (1990)). If a party has "no evidence to support its allegations" or has no merit, then the claim lacks substantial justification. *Id.* at 23; *see Braverman*, 228 Md. App. at 261 ("Yet, if those issues were sufficiently novel, difficult, and debatable to justify dismissing portions of the complaint and denying cross-motions for summary judgment, they must also have been sufficient to justify the State in defending the case.").

### Awarding Attorneys' Fees

If a court finds bad faith and a lack of substantial justification, the court must assess whether the conduct "warranted" attorneys' fees. *Charles v. Charles*, 265 Md. App. 631, 659 (2025). To survive appellate review, the court must find that: 1) "the fees requested by the aggrieved party were incurred by the party requesting the fees"; and 2) "the fees requested by the aggrieved party are reasonable." *Christian*, 459 Md. at 31. In determining reasonableness, a court may consider "evidence submitted by counsel showing time spent defending an unjustified or bad faith claim or defense, the judge's knowledge of the case and the legal expertise required, the attorney's experience and reputation, customary fees, and affidavits submitted by counsel." *Id.* at 32 (quoting *Major*, 97 Md. App. at 540). The award "must be apportioned based on the particular claims requiring compensation" and

34

"be limited to those claims to be reasonable." *Id.* If the fees "are not arbitrary, the court will not have abused its discretion" so long as the findings are on the record. *Id.* Courts in Maryland "have historically left the determination of the amount of the award under Rule 1-341 to the discretion of the trial judge to find according to his or her 'own knowledge of the case the legal effort and expertise required' and the affidavits of the parties." *Johnson*, 266 Md. App. at 245 (quoting *Jenkins v. Cameron & Hornbostel*, 91 Md. App. 316, 336 (1992) (citation and quotations omitted)).

### C. Analysis

*Bad Faith and Lack of Substantial Justification*

We hold that there was sufficient evidence for the court to infer the County's bad faith in defending this action. A finding of bad faith requires a probe into the party's intent, which is "more often than not provable only by inference from the surrounding circumstances[.]" *Johnson*, 266 Md. App. at 240 (quoting *Talley*, 317 Md. at 438); *Charles*, 265 Md. App. at 665-66 (upholding the circuit court's award of attorneys' fees to wife, where the court reviewed the history of the case and found husband's bad faith in bringing and maintaining his claims). Here, the surrounding circumstances include the history of the parties' dispute, extending 30 years, which we have detailed in several opinions, and recounted above.

The record is clear that after National secured the special exception from the Board in 1993, the County continued to exclude the Landfill from its SWMP for years, triggering numerous suits and appeals. MDE then suspended National's permit application, pending receipt from the County of a written statement, in line with the requirements of EN §

35

9-210(a)(3). The County refused to send the statement of conformance to MDE, even after the Supreme Court affirmed the Board's decision in 1995, until the court issued a contempt order. *National IV*, 135 Md. App. 585, 592-94 (2000). The County then renounced its statement less than three weeks later, with two letters advising MDE that National's special exception had expired. *Id.* at 595-97. The Supreme Court held that National's special exception did not expire, as it was tolled during the litigation of this case, delaying the County's statement of conformance until 2001. *Id*. at 604-05, 614.

Just as National neared the end of MDE's permitting process in 2020, the County purchased the land necessary for National to satisfy the special exception and then notified MDE *again* that National was out of compliance. MDE responded accordingly, ceasing National's application and denying the permit. National tried to work this out with the County, but the County refused to rescind the letters. National went back to court, seeking declaratory relief and mandamus. The circuit court granted summary judgment for National, directing MDE to continue its review and holding that the County's actions violated National's due process rights (not to mention defied two rulings of the Supreme Court). This fraught history was substantial evidence indicating bad faith. *Toliver v. Waicker*, 210 Md. App. 52, 71 (2013) ("[B]ad faith exists when a party litigates with the purpose of intentional harassment or unreasonable delay." (quoting *Barnes v. Rosenthal Toyota, Inc.*, 126 Md. App. 97, 105 (1999))). The court was not clearly erroneous in determining that the County's "actions in choosing to send the letters which the County clearly knew would lead to this litigation" and the County's "continued resistance" to National in this action despite having no legal basis, were "indicative of bad faith." *See*

36

*Plank v. Cherneski*, 469 Md. 548, 568 (2020) ("A trial court's findings are not clearly erroneous if 'any competent material evidence exists in support of the trial court's factual findings[.]'" (quoting *Webb v. Nowak*, 433 Md. 666, 678 (2013)).[16]

Similarly, the circuit court was not clearly erroneous in finding that the County lacked substantial justification for its defense. The record contains ample evidence that the County's defense (that its letters were merely "advice") was neither fairly debatable nor colorable. *See Christian v. Maternal-Fetal Medicine Assocs. of Md.*, 459 Md. 1, 22 (2018) ("For a claim or litigation position to lack substantial justification … [it] must not be 'fairly debatable … colorable, or … within the realm of legitimate advocacy.'" (quoting *URS Corp.*, 452 Md. at 72-73)). The County Code establishes a method for rescinding or modifying special exceptions: "a hearing" before the Administrative Hearing Officer. We cannot say that the circuit court was clearly erroneous in finding that the County had "no basis for believing that the correct legal avenue would be writing a letter to MDE and … circumventing the Board or the hearing process." The County admitted that it knew the access condition was a matter for the Board. *National VII*, No. 0565, 2022 WL 17494630 at *5-6 (Md. App. Dec. 8, 2022). Both the circuit court and this Court have acknowledged that this argument has been waived, yet the County again claims it is meritorious. *See*

---

[16] In its brief, the County claims bad faith was not the basis of the court's imposition of attorneys' fees. However, at oral argument, the County conceded that the court-imposed the attorneys' fees on the basis of bad faith. Indeed, the court focused on the County's bad faith as a basis for attorneys' fees throughout its memorandum and ultimately held that "the County unnecessarily furthered the litigation in bad faith and/or without substantial justification." *See Johnson v. Spireon*, 266 Md. App. 198, 244 (2025).

37

*National VII*, No. 0565, 2022 WL 17494630 at *6 (Md. App. Dec. 8, 2022). The circuit court correctly described the County's supposedly "novel" scenario—the applicant cannot possibly satisfy a condition because of the County's own intervening conduct—as "illusory." As early as August 1997, the court ordered the County issue the statement of conformance to MDE because all zoning requirements had been met, and in *National I* we made it clear that a special exception can be granted even if the property necessary for access is owned by third parties. *See generally* 339 Md. 131 (1995).

Nor is EN § 9-210 ambiguous about MDE's role. The statute, specifically "§ 9-210(a)(3) places no requirement on MDE to make any determination regarding a facility's status of compliance with local zoning and land use codes, except that it must receive a letter from the County stating its compliance before MDE may continue through the remaining phases of the process." *Piney Orchard Cmty. Ass'n v. Md. Dep't of the Env't*, 231 Md. App. 80, 95 (2016). MDE does "not err in determining that [the] application complied with EN § 9-210(a)(3)(i)" if the County provides a written statement, *id.* at 97, and "MDE is not required to request an updated written statement of compliance from the County after a certain period of time prior to issuing the permit." *Id.* at 104. There is no fairly debatable legal question here—EN § 9-210 is clear. *Cf. URS Corp. v. Fort Myer Construction Corp.*, 452 Md. 48, 75-76 (2017) (reversing sanctions when a legal question was fairly debatable).

The County is incorrect to argue that MDE did not receive confirmation that the Landfill met the zoning requirements from the County—the County sent a written statement in accordance with § 9-210(a)(3) in 2001. In the 2020 letters, the County

38

requested that "MDE follow State law and cease processing [National's] permit application … in light of [National's] continued failure to satisfy the zoning condition regarding access, the application should be denied." Clearly, the County's 2020 letters were not merely "advice" but constituted a rescission of the special exception without following the requirements set out in County Code § 18-16-404.

None of this analysis changes because the County was "forced" to defend itself in litigation. First, attorneys' fees are available for "the conduct of any party in maintaining **or defending** any proceeding … in bad faith or without substantial justification." Rule 1-341 (emphasis added); *Old Frederick Rd., LLC v. Wiseman*, 213 Md. App. 513, 515-16, 523 (2013) (affirming the decision to award attorney's fees because of appellant's frivolous defense). Second, EN § 9-210 clearly states MDE must halt review of a permit application until it receives a written statement from the County that the landfill meets all applicable land use and zoning laws. Therefore, MDE could not have ignored the County's 2020 letters stating that the Landfill did not meet such land use and zoning laws. To restart the permitting process, National needed the County to comply with the law, so the County was a necessary party. For these reasons, we agree with the circuit court that the County's "arguments are not colorable or novel, but simply lack any merit and are clear attempts to further prevent [National] from obtaining the permit that they applied for over 30 years ago."

*Award and Assessment of Attorneys' Fees*

Next, we hold that the circuit court did not abuse its discretion in awarding attorneys' fees in the amount of $491,984.35. The record clearly establishes that National

39

incurred significant attorneys' fees from three different law firms for the work these attorneys conducted since National began working on the complaint and petition for writ of mandamus in 2020. National had to bring suit to vindicate its rights because the County sent the 2020 letters, knowing the letters would lead to MDE's discontinuation of its review of National's permit, and refused to withdraw them, all without a substantial justification.

The court properly assessed the fees requested by giving due consideration to the hours quoted by National and the local rate. Through the court's "extensive *in camera* review of the unredacted records[,]" the court removed duplicative tasks from the award noting that while this reduced the fees, National "still incurred costs, which would not have been necessary if not for the County's insistence in defending its action" without a legal basis. As the court pointed out, National still had to use the "same amount of labor … to reach the end result–simply within a shorter time frame" and that "the swift and successful resolution on summary judgment was only possible because of the skill and experience exemplified by the [National's] counsel." Rule 1-341 applies a "customary fee prevailing in the attorney's legal community for similar legal services[.]" Looking to the affidavit of Ms. Henley, who charges "customary rates" for legal services in Anne Arundel County and who provided legal services for National in this case, the court determined that an appropriate rate would be $395 per hour.

As the County notes, it can be difficult to compare the reasonable hours spent in two different actions:

> **Comparing this award to awards in similar cases is difficult at best. This case is "similar" to very few before this court.** Its length and initial complexity were caused by the plaintiffs' failure to respond to discovery or

40

to clarify the legal basis for their claims. Within the circumstances of this case, the fees requested are particularly appropriate.

*Brady v. Hartford Fire Ins. Co.*, 610 F. Supp. 735, 742 (1985) (emphasis added). The dispute here has almost no analogue—it has continued for 30 years, in large part because of the County's own bad faith actions. We therefore decline the County's invitation to limit National's reasonable attorney hours based on the hours necessary to litigate other cases. Counsel here had to familiarize themselves with a decades-long fight so that they could show that their client had clear legal rights enforceable in mandamus.

The circuit court explained that its imposition "of attorney[s'] fees reli[ed on the court's] personal knowledge of the case throughout the[] proceedings as well as recollections of the attorneys on the case, the work completed, the intricacies of the issues, the affidavits submitted by counsel, the hourly rates and experience of the attorneys, and how effective and beneficial the work was to the client." The circuit court properly explained its assessment and the factors it considered in determining its award, and we find substantial evidence in the record supporting its conclusions. *See Christian v. Maternal-Fetal Medicine Assocs. of Md.*, 459 Md. 1, 31 (2018) ("[A] court must denote with particularity how its award corresponds with a party's misconduct[.]" (quoting *Barnes v. Rosenthal Toyota, Inc.*, 126 Md. App. 97, 106 (1999))).

For the foregoing reasons, we affirm the judgment of the circuit court and hold that the court did not abuse its discretion in awarding National $491,984.35 in attorneys' fees.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

41